## F. ANSPACH et al. *v.* W. S. RELFE.

**Attachment — Dissolution of Corporation — Assignee's Rights.**

Where a corporation has been dissolved, after attachment against it, and its assets vested in an assignee, such assignee has the right to intervene in the attachment proceeding, and to recover from the plaintiff and the sureties on his bond, damages caused by the wrongful suing of the attachment.

**Same — Abatement of Action — Garnishment — Code of 1871, Sections 1486 and 2411.**

In an attachment proceeding, the service of a writ of garnishment is sufficient to prevent the abatement of the action. Code of 1871, §§ 1486 and 2411.[1]

**Assignee — Right to Become Party — Transfer of Interest After Suit — Code of 1871, Section 670.**

Under the provisions of section 670 of Code of 1871, the court may allow one to whom an interest has been transferred after suit is brought to be substituted in the action.[2]

On the 8th day of November, 1879, F. Anspach sued out a writ of attachment against the Life Association of America, a foreign corporation, domiciled in St. Louis, Mo., and on the same

---

[1]
"If the defendant shall die, after the service of the writ of attachment, the action shall not thereby be abated or discontinued, but shall be carried on to judgment, sale, transfer, and final determination, as if the defendant were still alive, and such death had not occurred; and all proceedings and deeds in such cases are hereby declared to be as valid and effectual in law, as if had and made in the lifetime of such defendant." Code of 1871, § 1486. See also Code of 1880, § 2466; Code of 1892, § 161; Code of 1906, § 166.

The object of the section is to authorize the court, after the attachment was served, notwithstanding the death of the defendant, to proceed to judgment and sale, or final process, against the garnishee and property attached. For those purposes and to that extent, the process is strictly *in rem.* Holman *v.* Fisher, 49 Miss. 472, citing Melius *v.* Hudson, 41 Miss. 59.

The administrator of the deceased defendant may appear, whether the deceased was or was not served. Dyson *v.* Baker, 54 Miss. 24.

If the administrator appear, or be brought into court, a judgment *in personam* may be rendered against him as such. Lowenburg *v.* Tironi, 62 Miss. 19.

[2] "When a corporation is in court, by process executed, the case shall pro-

day a writ of garnishment was served on A. J. Frantz; no property was seized, and Frantz did not answer.

After the attachment was sued out the defendant corporation was dissolved by a decree of the Circuit Court of the United States, and its assets were vested, under the laws of Missouri, in appellee, W. S. Relfe, superintendent of insurance. The attachment suit was afterwards dismissed. Relfe, on his application, was admitted to defend the attachment, and applied for a writ of inquiry to assess his damages for the wrongful suing out of the attachment, which was granted. Plaintiff objected to the introduction of any evidence of damages, and the objection was overruled, to which plaintiff excepted. A judgment for $200 damages was rendered against plaintiff in the attachment, and he appeals.

APPEALED from Circuit Court, Rankin county, A. G. MAYERS, Judge.

Affirmed, April 25, 1881.

*Attorneys for appellants, Lowry & McLaurin.*

*Attorney for appellee, J. L. McCaskill.*

Brief of Lowry & McLaurin:
\* \* \* After absolutely dissolving the corporation, the court in St. Louis decreed that Relfe might institute, maintain,

gress as if a natural person were defendant; and all bonds or other writings, necessary for defending or prosecuting a suit, when signed by the president of the corporation, and sealed with the corporate seal, shall be valid and binding." Code of 1871, § 2411. See also Code of 1880, § 1035; Code of 1892, §842; Code of 1906, § 907.

2

"The assignee of any case in action may sue for and recover the same, in his own name, if the assignment be in writing; and in case where the assignment is not in writing, and the original payee is dead, and there is no executor or administrator of the estate, suit may be brought in the name of the assignee. In case of a transfer of interest after suit brought, the action shall be continued in the name of the original party, or the court may allow the person to whom the transfer is made, to be substituted in the action. No set off or other defense existing at the time of, or before notice of the assignment, shall be prejudiced thereby." Code of 1871, §670. See also Code of 1880, § 1507; Code of 1892, § 660; Code of 1906, § 717.

and defend, in his own name, or that of the' corporation, any and all actions in the courts of that State or any other State, etc.

There was never any service on the corporation. Upon this case it is contended that the plaintiff was not liable for damages, because the dismissal of the attachment resulted, as a matter of law, from the civil death of the defendant, and precluded the plaintiff from a trial of the rightfulness or wrongfulness of the suing out of the attachment. See Farmers & Mechanics Bank *v.* Little, 8 Watts & Sergeant, 207; Paschall *v.* Whitsett, 11 Ala. 472.

After a thorough examination of law, the plaintiff reached the conclusion that the attachment was, by operation of law, dismissed by the death of the defendant, and this conclusion, we think, is irresistible. Drake on Attachment, 434.

If such is the law it would have been obstinacy to have persisted in the suit. Ordinarily, where the plaintiff dismisses his attachment, it is an admission that it was wrongfully sued out, and damages are recoverable for the wrongful suing out thus admitted. But when it is dismissed by operation of law, by reason of something transpiring after it was sued out, and that something over which he has no control, it falls far short of such admission, and damages ought not to be awarded.

The reason given why an attachment is dismissed upon the civil death of a corporation, is that the assets are to go *pro rata* to all creditors.

There is no question that the law denied plaintiff the right to pursue his attachment after the civil death of the corporation, unless it was warranted by section 1486 of Code 1871. Let us examine that. The section allows the attachment to go on after the death of the defendant, where there has been service of the' writ before the death. What is service of the writ? Seizure of the property and notification of the defendant, if to be found; if not to be found, then the sheriff returns that the part of the writ requiring him to summon or notify the defendant has not been served and cannot be served, whereupon the court adopts constructive notice by publication. It never was the intention of the statute to allow judgment without any notice, actual or constructive. If it was, it is unconstitutional. Jack *v.* Thompson, 41 Miss. 49; Brown *v.* Levee Comrs., 50 Miss. 487.

Publication is an inferior mode of constructive notice and must

be strictly in accordance with the statute before there is any service, and therefore there could be no service, by publication, in two days.    Foster v. Simmons, 40 Miss. 587; Patrick v. Dillard, 44 Miss. 384; Wood v. Page & Moran, 55 Miss. 105.

In Holman v. Fisher, 49 Miss., on page 478, in delivering the opinion of the court, Judge Simrall said: "It would have been competent for the Legislature to have given to the seizure of the property, under the writ, the effect of constructive notice to the defendant for all the purposes of dealing with the property and disposing of it towards the payment of the plaintiff's debt.    But it saw proper to adopt other means of notice, by publication, in addition, notice through the mail."

This seems to establish that there must be notice, actual or constructive, to the defendant, before the plaintiff can proceed against the property; and that a seizure of the property is not such notice.    Without notice, there could be no judgment against the defendant.    Jack v. Thompson, *supra.*

Without judgment against defendant there could be no judgment against the garnishee.    Whitehead v. Henderson, 4 S. & M. 705.    Mandell v. McClure, 14 S. & M. 11; Hinds v. Miller, 52 Miss. 846; Barry v. Anderson, 2 How. 649.

The garnishee is bound to see that the judgment against him is founded on a valid judgment against the defendant in attachment, and if he fails to do so, payment by him will be no protection to him.    Oldham v. Ledbetter, 1 How. (Miss.) 43; Berry v. Anderson, 2 How. 649.

We have, then, the following points made out:

1.    The civil death of the defendant abates or operates as a dismissal of the attachment at common law.

2.    The statute allowing attachments to proceed where there has been service of process before death of defendant does not reach this case, there being no service on the corporation before its death: because there could be no judgment without notice, actual or constructive, and the seizure of property, much less the garnishment of a supposed debtor, is not actual or constructive notice, as Judge Simrall expressly said in Holman v. Fisher, 49 Miss. 478.

3.    No judgment could have been entered against the garnishee, and if there had been, payment of it would have been no defense to the garnishee against the collection of Relfe's debt against the

garnishee, if he had any such debt, of which we will say, by way of parenthesis, that there is no evidence or record.

It follows, then, that the attachment in this case abated on the 10th day of November, 1879; that on that day no damage had resulted to the corporation, and of course none could be assigned to Relfe; that no action that could have been taken in the Circuit Court of Rankin county could have affected any of the rights of Relfe, and therefore his appearance upon the arena was entirely voluntary and gratuitous, especially when it is remembered that he never made his appearance until after the suit was dismissed. It follows that the suit could not have been pursued.

But he says that Relfe was allowed by the decree to go into all courts and institute and defend suits, either in the name of the corporation or in his own name, and therefore Relfe could not under the law of this State, but under the law enacted by that decree and in contravention of the law of this State, voluntarily, without service of process, actual or constructive, enter this appearance to a suit already abated by operation of law, and, when the court formally entered a judgment of dismissal, claim damages. To such is his claim reduced.

(That the suit was absolutely abated on dissolution of the corporation we digress from the argument to refer the court to these other authorities: Angell & Ames on Corporations, § 779; Greely *v.* Smith, 3 Story, 657; Merrill *v.* Suffolk Bank, 31 Maine, 17, 57; Ingraham *v.* Terry, 11 Humph. 572; Saltmarsh *v.* Planters Bank, 17 Ala. 761. Against all these we find but one decision, *i. e.,* Lindell *v.* Benton, 6 Mo. 361, and Angell & Ames give it as an exception and not as law.)

We may not be able to comprehend this question, but to us it is a matter of surprise that counsel should insist on the right of the court in Missouri to prescribe remedies in the courts of this State. The Circuit Court in Missouri could only deal with the rights of parties there, such as dissolving the corporation and vesting the title to all the assets of the corporation in Relfe for the benefit of the creditors; but with the remedies and course of procedure in courts of other States, that court has nothing to do, nor can the court there decree that a corporation which it has judicially ascertained to be dissolved and dead, shall be allowed to sue or be sued in other States. Angell & Ames on Corporations, § 779.

The corporation being out of existence, it could not be a party
to any proceeding, and no court could authorize the dead things
being made a party in court.    The Legislature of a State has
the power to preserve its existence until it winds up its affairs,
but the court that dissolves it cannot, unless there is a statute ex-
pressly allowing it.    By reference to Angell & Ames on Cor-
portations, section 766, and from sections 774 to 779, inclusive,
it will be seen that this is the spirit of the law.    The implication
is clear that no power can do this except the Legislature; and
when a court deals with it, the court can only dissolve the cor-
poration, and vest the title to the assets in a receiver for the benefit
of those interested, and when the receiver goes into another court
to collect the assets he may look to the decree of the court for his
right to the collection of the assets, but he must pursue the reme-
dies of the court into which he goes, just the same as anybody
else, and one of these remedies is that he who has the legal title
must be a party, and no dead person can be a party in court.
Therefore, that part of the decree which undertakes to prescribe
in whose name a suit may be instituted or defended in other courts
and other States, is *ultra vires*.

The point made by counsel that a decree made in one State is,
by comity, as binding in other States as it is in the State where
made, is based upon a principle of law we thought was well de-
fined and well understood.    It is this:  Any right adjudged or
decreed by a court of one State is recognized by the courts of
other States, but the courts of one State never recognize the right
of a court in another State to prescribe remedies for them.    To
illustrate:  A recovers judgment in South Carolina against B, for
$1,000, and B moves to this State before it is paid.    A sues B
here, and the courts here will recognize the binding force of the
judgment in South Carolina.    But let A wait eight years after
rendition of the judgment in South Carolina before he sues, and
B plead the statute of limitations, and the courts here will deny
him a remedy, although the statute would run twenty years in
South Carolina, and although the judgment there directed that it
should never be barred.    Let a decree in chancery be entered for
money there, and let the decree provide that upon removal of de-
fendant to any other State the plaintiff could sue in the Chancery
Court of the State to which he removed, and recover judgment on
the decree.    If he comes to this State and sues in chancery, he

will be told that we recognize the right to the money decreed to him, but he must pursue the remedies that obtain here, and that his remedy is by a suit in the Circuit Court. We think from this it follows that the part of the decree which pretended to authorize the corporation's name to be sued in defending the suit was *ultra vires.*

But suppose we are mistaken in this—the result is not changed, because the decree does not pretend to authorize the continuance of suits against the corporation, and still the suit in attachment abated on the 10th day of November, 1879, and no property being seized or witheld from him, there was no earthly use for his appearing in court, unless it was to get an excuse for claiming damages.

In any view of the case, then, the attachment abated, by operation of law, on the 10th of November, 1879, and the plaintiff could not have prosecuted it, and this without any fault of his. Therefore we ask, and we think with good reason, would it not be wrong to hold him liable for damages? The spirit of the statute, section 1465, Code 1871, never intended to allow damages in a case like this. It only intended to allow it where the dismissal is an admission of the wrongful suing out of the attachment. There is no such admission where the law dismisses the attachment for reasons over which he has no control. If the statute is literally construed, or construed according to its spirit, Relfe cannot recover. Its spirit we have given as we understood it. Its letter would deny damages unless the plaintiff dismisses his attachment. The law dismisses it here, on account of the action —the death—of the defendant, and not of the plaintiff. Its letter would deny damages to any one except the defendant; here Relfe claims, and the defendant cannot claim, because it is dead. No damages had accrued to the corporation before its death and none could be therefore assigned even if the dismissal by operation of law would entitle defendant to damages.

Before concluding, we will call the attention of the court to this fact: it does not appear that Frantz owed anything. *"Quod non apparet non est."* Where, then, is the damage in any event?

Brief of J. L. McCaskill:

If the judgment appointing Relfe assignee is worth anything, and I insist it is, in addition to the jurisdiction obtained by service

on the garnishee, he thus voluntarily entered his appearance, thereby waiving all defects and notice, and there can be no doubt but that plaintiff could have sustained his judgment against the garnishee, in the event he could have sustained his attachment on the merits.

"When a corporation is in court by process executed, the same shall progress as if a natural person were defendant." Code 1871, § 2411.

"Corporations which exist by the laws of any of the States of the Union may sue in this State by their corporate names, and they shall also be liable to be sued or proceeded against by attachment or otherwise as individual non-resident debtors may be proceeded against." Code 1871, § 2416.

Then, whatever may have been the common law rule in regard to corporations, by the above statutes they are placed on a level with natural persons and will be governed by the same rules and principles of law.

"In case of a transfer of interest after suit brought the action shall be continued in the name of the original party, or the court *may* allow the person to whom the transfer is made to be substituted in the action." Code 1871, § 670.

Thus, by our own statute, it was not necessary for Relfe to have been made a formal party, and even in the absence of the authority vested in him by the judgment appointed him, he could, under the above statute, have defended the suit in the name of the original party. There is no force in the argument of counsel that the court below refused to make or substitute him the party defendant, after the dismissal of the suit in attachment. The court did recognize him as a proper party by entertaining and sustaining a motion for a writ of injury, which was made and filed immediately on the dismissal of the attachment, although it was not executed until the 17th day of the term. There is no objection to the amount of damages assessed. It was conceded, on the trial of the writ, that the debt due by Frantz was $1,500, and it was contended by counsel for plaintiff that it was only a $1,500 suit, although they claimed in their affidavit and declaration, $7,000.

"If a defendant against whom an attachment is sued out, but is not served with the writ, appears and pleads to the merits of the action, the judgment against him will have the same effect and force against his person as in other actions where a summons

has been served personally." Barrow *v.* Burbridge & Co., 41 Miss. 622.

Relfe appeared at the return term and filed the only plea he could file under our present system of practice.

"The court had jurisdiction by service on the garnishee—where a writ of attachment has been executed by summoning garnishees—and the defendant afterwards dying without having been personally summoned, his administrator appears and pleads, section 1646, Code of 1871, authorizes a judgment of condemnation of the amount due from the garnishee." Dyson *v.* Baker, 54 Miss. 24.

The last case cited is similar to the one at bar, with the single exception that one was a natural person and the other a corporation, and, I think, decides the case in favor of the defendant in error. The difference between the two cases referred to is settled by our own statute heretofore noticed, making the same rules applicable to corporations that apply to natural persons. Relfe had appeared at the proper time, as he was authorized to do by the judgment appointing him, and also by section 670, Code of 1871, and had plead. It will not do to say that no damages could accrue to a corporation after its dissolution or civil death. Might as well say no damages could accrue to an estate after the death of the intestate. Relfe had no means of knowing that the plaintiff would become alarmed and afraid to try his case on its merits, and, as his duty required him to do, employed counsel to defend the suit. He knew that they had service on the garnishee, and that it being to that extent a proceeding *in rem,* they might insist on a judgment to the extent of the debt garnisheed. Of course, the garnishee would make no debt after service of the writ until the case was decided. In any and every aspect of the case it was clearly his duty to employ counsel to defend the suit, and when plaintiff dismissed his attachment, he was clearly entitled to damages for a reasonable attorney's fee.

Section 2442 of Code 1871 authorizes insurance companies from other States under the restrictions therein contained, to transact business in this State, and the assignee of such company would, of course, be authorized to do all lawful acts necessary to wind up or protect the interests of the company.

By a principle founded in Comity, "the record of a judgment in a State duly authenticated has the same credit, validity and effect

in the court of every other State, that it has in the courts of the State where it was rendered." Conkling's Treatise, 4th ed. 372.

The attachment having been dismissed, the garnishee has nothing further to do with the case, and the authorities cited to show that he was bound to see that a good judgment was rendered against him, or that it would have been no protection to him, etc., are not applicable to the issue presented by this record.

A judgment against the corporation rendered under our statutes would be as binding on the corporation in the State where it exists as in this State where it was rendered. Angell & Ames on Corporations, 654, p. 4; 5 McLean C. C. 461; 18 How. 404.

"The case of a corporation is not to be distinguished from the case of a private person dying *pendente lite.*" Angell & Ames on Corporations, § 638, and note 7, same page.

"Provisions are made to prevent the abatement of suits by or against corporations in several States by statute." 4th Duer, 379; 2 Ohio State, 167.

By reference to the sections of our statute in force at the time and heretofore cited in this brief, it will be seen that the provision referred to by the learned author was made by our statute when it made the same rules apply to corporations that do to individuals. Code 1871, §§ 2411, 2416.

It has been held in Missouri that legal proceedings commenced against a corporation are not affected by the expiration of the charter before the determination of such proceedings. Lindell *v.* Burton, 6 Mo. 365-366.

A corporation is a person in the meaning of the attachment law. During the existence of the defendant as a corporation its officers were the agents or trustees of the policy holders and stock holders and creditors generally, and when the corporation was dissolved and its assets assigned to Relfe for the benefit of the policy and stock holders, and creditors, Relfe stood in the same relation to the interested parties that the officers held prior to the dissolution; and any damages to the assets of the concern in his hands would result in the same injury to the real parties in interest that it would have done were the corporation still in existence.

By the service of process on Frantz, the court obtained and had jurisdiction of the subject matter to the extent of the sum due by Frantz. And by the appearance and plea of the assignee or

trustee, it obtained jurisdiction of the person. Dyson *v.* Baker, 54 Miss. 24.

Therefore the suit did not abate, and the defendant was entitled to his writ of inquiry and jury to assess his damages.

There is a broad distinction between the civil death of a corporation when one expires by limitation of its charter, or other cause, and when no assignment is made, or provision made for winding up the business, or the protection of the creditors, and when an assignment is made to a trustee to wind up the business and protect the interest of creditors. In the latter case it has a prolongation in the nature of an administration and the assignee or trustee has all the rights and remedies that an administrator would have.

"The rule of the common law, in relation to the effect of dissolution upon the property and debts of a corporation has in fact become obsolete. The rule has never been applied in England to insolvent or dissolved corporations; and in this country its operation has been arrested by the enactment of statutory provisions, either general or special." See Wood *v.* Dummer, 3 Mason, 309; Reed *v.* Frankfort Bank, 23 Me. 318; Nevitt *v.* Bank of Port Gibson, 6 S. & M. 513; White *v.* Campbell, 5 Humph. (Tenn.) 38; Towar *v.* Hale, 46 Barb. 361; Heath *v.* Barman, 50 N. Y. (5 Sick.) 302; Bank of Salem *v.* Caldwell, 16 Ind. 469; Lum *v.* Robertson, 6 Wall. 277.

The fact that the garnishee had not answered does not help the case. If the case had proceeded to judgment in plaintiff's favor, in the absence of an answer he could and would have taken a judgment against him for the amount of his claim.

I call the special attention of the court to the record, showing that the assignee appeared and plead at the return term of the writ, as he had a right to do under section 670 of the Code then in force, in the name of the original defendant. He clearly had as much right to take advantage of our statutes as the plaintiff, who, being himself a non-resident, had to take the advantage given him by another statute and come into this State and by his attorney sue out an attachment. I insist, however, that this right was secured to him by the judgment appointing him, and I deny that the judgment could be construed into prescribing any new rule or remedy to the courts of this State.

Plaintiff knew at the February term of the appointment of

Relfe, then why continue the case six months and tie up the sum garnished that much longer? There can be no doubt but that Relfe stood in the same relation to the assets and creditors that the officers of the corporation did before the assignment; that the court had jurisdiction of the sum garnished, and that the appearance of Relfe gave jurisdiction of the person, and that the suit did not abate; and the judgment of the court below is correct.

OPINION.—COOPER, J.:

By the terms of section 6043 of the Revised Statutes of Missouri, on dissolution of an insurance company, all its assets become the property of the superintendent of insurance and his successors in office, and are devoted to the liquidation of demands against it. By the decree of the Circuit Court of the city of St. Louis, made on the 10th day of November, 1879, the Life Association of America, a corporation subject to the laws of the State of Missouri, was dissolved, and its assets vested in appellee as superintendent of the insurance department of said State. By reason of this decree, the appellee became invested with the right to intervene in the attachment proceedings; to stand in the place of the defendant corporation, and to recover from the plaintiff in the attachment and the sureties on his bond all damages which had been caused by the wrongful suing out of the writ, which the corporation, but for its dissolution, might have recovered. Darcy v. Spivey, 57 Miss. 527.

The service of the writ of attachment by garnishing Frantz was sufficient to prevent the abatement of the action. Code of 1871, §§ 1486, 2411; Dyson v. Baker, 54 Miss. 24.

The appellee, as assignee of the defendant, had the right to be made defendant in place of the corporation and to recover the damages sustained by it. Code, § 670; Williams v. Cresswell et al., Comrs. 51 Miss. 817.

*The judgment is affirmed.*